UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRENE I.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security Administration, <br><br> Defendant. | Case No. 5:19-CV-00089-JC <br><br> MEMORANDUM OPINION AND ORDER OF REMAND |

## I. SUMMARY

On January 15, 2019, plaintiff Irene I. filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion")

---

[1] Plaintiff's name is partially redacted to protect her privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

(collectively "Motions").  The Court has taken the Motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; January 17, 2019 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On June 25, 2015 and June 26, 2015, respectively, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning on January 31, 2009[2] due to diabetes, dizziness, nausea, high cholesterol, hepatitis, thyroid disease, tumor on ovary, and high blood pressure.  (Administrative Record ("AR") 201-08, 228).  Plaintiff subsequently alleged that depression and severe anxiety also limited her ability to work.  (AR 240, 251, 273).  The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert.  (AR 37-70).

On February 8, 2018, the ALJ determined that plaintiff was not disabled through the date of the decision.  (AR 15-30).  Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments:  diabetes mellitus, hypertension, an ovarian cyst, and obesity (AR 18); (2) plaintiff's impairments, considered individually or in combination, did not meet or medically equal a listed impairment (AR 20); (3) plaintiff retained the residual functional capacity to perform medium work (20 C.F.R. §§ 404.1567(c), 416.967(c)) with additional
///

---

[2]At the administrative hearing, plaintiff amended the alleged onset date to August 1, 2011.  (AR 40).

2

limitations[3] (AR 21); (4) plaintiff could perform past relevant work as an instructional aide and childcare monitor (AR 27-29); (5) in the alternative, even if plaintiff could perform only light work, there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically, small product assembler, collator, and light packer (AR 29); and (6) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely consistent with the medical evidence and other evidence in the record (AR 21-22).

On November 20, 2018, the Appeals Council denied plaintiff's application for review. (AR 1-6).

### III. APPLICABLE LEGAL STANDARDS

#### A. Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted); 20 C.F.R. §§ 404.1505(a), 416.905. To be considered disabled, a claimant must have an impairment of such severity that she is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. See

---

[3]The ALJ also determined that plaintiff could frequently climb, balance, stoop, kneel, crouch and crawl. (AR 21).

3

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four – *i.e.*, determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual functional capacity to perform past relevant work (step 4). Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). The Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy. Id.

**B.     Federal Court Review of Social Security Disability Decisions**

A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). The standard of review in disability cases is "highly deferential." Rounds v. Commissioner of Social Security Administration, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted). Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision. Trevizo, 871 F.3d at 674-75 (citations omitted). Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. See Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining

4

"substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted). When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

**IV.  DISCUSSION**

Plaintiff contends that the ALJ erred in finding that plaintiff's mental impairments were nonsevere and in rejecting the opinion of an examining psychiatrist, Dr. Mahender Purmandla. (Plaintiff's Motion at 2-6). The Court agrees that a remand is warranted.

///
///
///
///
///

**A.     Pertinent Law**

    **1.     Step Two**

At step two a claimant essentially must present objective medical evidence[4] which establishes that she has a sufficiently severe medically determinable physical or mental impairment that satisfies the duration requirement (*i.e.*, an impairment that has lasted or can be expected to last for a continuous period of twelve months or more).  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 404.1521, 416.909, 416.920(a)(4)(ii), 416.921; see also 42 U.S.C. §§ 423(d), 1382c(a)(3); see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987); Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citation omitted).

Step two "is a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen, 482 U.S. at 153-54), superseded, in part, on unrelated grounds by 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  "An impairment . . . may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'"  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting id.) (emphasis in original); see also 20 C.F.R. §§ 404.1522(a); 416.922(a) (impairment "not severe" only when it does not "significantly limit [a claimant's] physical or mental ability to do basic work activities"); Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, *2 (substantial evidence supports ALJ's determination that a claimant is not disabled at step two only where "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental

---

[4] "Objective medical evidence" consists of "signs, laboratory findings, or both." 20 C.F.R. §§ 404.1502(f), 416.902(f). "Signs" are "anatomical, physiological, or psychological abnormalities that can be . . . shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. §§ 404.1502(g), 416.902(g). "Laboratory findings" are "anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. §§ 404.1502(c), 416.902(c).

impairment"). Hence, when reviewing an ALJ's findings at step two, the district court essentially "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." Webb, 433 F.3d at 687 (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

In determining whether or not a plaintiff's mental impairment is severe, ALJs are required to evaluate the degree of mental limitation in the following four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. If the degree of limitation in these four areas is determined to be "mild," a plaintiff's mental impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in his ability to perform basic work activities. See 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d).

### 2. Evaluation of Medical Opinion Evidence

In Social Security cases, the amount of weight given to medical opinions generally varies depending on the type of medical professional who provided the opinions, namely "treating physicians," "examining physicians," and "nonexamining physicians." 20 C.F.R. §§ 404.1527(c)(1)-(2) & (e), 404.1502, 404.1513(a), 416.927(c)(1)-(2) & (e), 416.902, 416.913(a); Garrison, 759 F.3d at 1012 (citation and quotation marks omitted). A treating physician's opinion is generally given the most weight, and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). In turn, an examining, but non-treating

physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion. Garrison, 759 F.3d at 1012 (citation omitted).

An ALJ may reject the uncontroverted opinion of an examining physician by providing "clear and convincing reasons that are supported by substantial evidence" for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). Where an examining physician's opinion is contradicted by another doctor's opinion, an ALJ may reject such opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." Garrison, 759 F.3d at 1012 (citation and footnote omitted). In addition, an ALJ may reject the opinion of any physician, including a treating physician, to the extent the opinion is "brief, conclusory and inadequately supported by clinical findings." Bray v. Commissioner of Social Security Administration, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted).

An ALJ may provide "substantial evidence" for rejecting such a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Garrison, 759 F.3d at 1012 (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)) (quotation marks omitted).

### B. Pertinent Facts

#### 1. Charlee Family Care

Plaintiff was assessed with anxiety and received treatment with medication in 2012 by her primary care physician (PCP), was referred to psychiatry in June 2013, started treatment at Charlee Family Care ("CFC") in April 2014, and treated at CFC and with her PCP thereafter. (AR 333, 392, 398, 400-01, 820-28). At plaintiff's initial assessment at CFC in April 2014, Dr. Bhuvaneswari Nallamothu and Marriage and Family Therapist (MFT) Mary Russell diagnosed her with panic disorder with agoraphobia and major depressive disorder, recurrent, severe, with a

Global Assessment of Functioning score of 45.[5] (AR 333-35). Her dysfunction rating was severe, and medication and therapy was recommended to control her depression and anxiety that inhibited her normal functioning, causing panic attacks and near-inability to leave the home. (AR 334). Dr. Nallamothu's treatment notes document plaintiff's treatment from May 2014 to October 2015. (AR 336-40). In April 2014, MFT Russell completed a form certifying eligibility for in-home supportive services, indicating that in-home care was needed due to "[e]xtreme anxiety, sometimes can't leave the house." (AR 803). In June 2014, Dr. Nallamothu completed a similar form, indicating that in-home care was needed due to "severe anxiety causing functional impairment in all areas of [plaintiff's] life." (AR 804).

In May 2015, MFT Russell completed a form regarding plaintiff's mental abilities and aptitudes for doing unskilled, semi-skilled, and skilled work, indicating that plaintiff was unable to meet competitive standards or had no useful ability to function in 16 of the 25 areas, and would be absent from work more than three times a month due to her impairments or treatment. (AR 801-02). She opined that plaintiff was most limited in areas such as completing a normal

---

[5] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment. Garrison, 759 F.3d at 1002 n.4 (quotation marks and citation omitted); see also American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 2000). A GAF score from 41 to 50 denotes "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 32. A GAF score from 71 to 80 denotes, "[i]f symptoms are present, they are transient and expectable reactions to psycho-social stressors (e.g., difficulty concentrating after family argument); no more than [a] slight impairment in social, occupational, or school functioning (e.g., temporarily failing behind in schoolwork)." DSM-IV at 32. GAF scores, standing alone, are not determinative of the severity of mental impairments for purposes of social security disability claims. See 65 Fed. Reg. 50746, 50764-65 (August 21, 2000) ("The GAF scale, which is . . . used in the multiaxial evaluation system endorsed by the American Psychiatric Association . . . does not have a direct correlation to the severity requirements in our mental disorder listings.").

workday and work week without interruptions from psychologically-based symptoms, accepting instructions and responding appropriately to criticism from supervisors, dealing with normal work stress, and interacting appropriately with the general public. (AR 801-02). In December 2015, MFT Russell completed a mental disorder questionnaire form, indicating that plaintiff mostly stays home due to her depression and anxiety; if she goes out, she has panic attacks and can only go out with her daughter; and she cannot commit to leaving the house regularly or attending work hours. (AR 789-92).

The ALJ gave "little weight" to the opinions of MFT Russell, finding they were based on "a brief treating relationship" and were "unsupported by contemporaneous treatment notes documenting above average intelligence, intact memory, attention, insight, and judgment." (AR 26). The ALJ gave "very little weight" to the in-home supportive services forms completed by Dr. Nallamothu and MFT Russell, finding that they had just started treating plaintiff when the forms were completed, the submissions were "general in nature," and the submissions were unsupported by the treatment notes, which showed that plaintiff was doing better, and demonstrated above average intelligence, intact memory, and fair insight and judgment. (AR 26).

### 2. Dr. Mahender Purmandla

Dr. Purmandla performed a complete psychiatric evaluation of plaintiff on February 5, 2016. (AR 807-11). On examination, plaintiff was cooperative and had good eye contact. (AR 809). Her psychomotor was determined to be shaking and nervous, with no evidence of involuntary movements. (AR 809). Her mood was described as anxious. (AR 809). Plaintiff was unable to do serial sevens and/or serial threes, and was able to spell the word "world" forward, but not backward. (AR 809). Dr. Purmandla diagnosed plaintiff with panic disorder with agoraphobia and assessed a GAF score of 80 (see supra note 5). (AR 810). In regards to functioning, Dr. Purmandla found plaintiff had moderate difficulty

maintaining composure and even temperament, mild difficulties in maintaining social functioning, no difficulties focusing and maintaining attention, and no difficulties in concentration, persistence and pace. (AR 810). Dr. Purmandla also found that plaintiff would have moderate limitations completing a normal workday or work week due to her mental condition; no limitations performing simple and repetitive tasks; mild limitations performing detailed and complex tasks; no difficulties being able to perform work activities on a consistent basis without special or additional supervision; no limitations accepting instructions from supervisors and interacting with coworkers and the public; and mild difficulties being able to handle the usual stresses, changes and demands of gainful employment. (AR 810). Dr. Purmandla stated that his findings were based on the objective findings presented during the evaluation. (AR 810).

The ALJ gave "partial weight" to Dr. Purmandla's opinion, finding the GAF score "suggestive of no more than mild limitations and [ ] consistent with Dr. Purmand[l]a's examination findings," the State Agency medical consultant's opinion (see infra Part IVB3), and treatment notes reflecting intact memory, attention, judgment and insight. (AR 25). The ALJ found Dr. Purmandla's statement regarding moderate limitations in completing a workday or work week "inconsistent with the rest of the opinion," and the other medical opinions. (AR 25).

### 3. Dr. Brad Williams

The nonexamining State Agency medical consultant, Dr. Williams, who reviewed the file on February 24, 2016 upon reconsideration, found plaintiff's mental impairments not severe. (AR 113). Dr. Williams noted that plaintiff could shop online, handle finances, watch television, visit with family, and get along with people and authority figures, although anxiety affected her attention at times. (AR 113). He found plaintiff to have mild limitations per the clinical findings, and he accorded great weight to her GAF score of 80, indicating that she was not

severely limited. (AR 113). The ALJ gave "great weight" to Dr. Williams' opinion, finding it consistent with the medical record indicating that plaintiff demonstrated intact memory, attention, judgment and insight; and evidence indicating that plaintiff improved with medication. (AR 25). The ALJ also noted that plaintiff admitted that she could get along with others, never lost a job due to interpersonal issues, spent time with family, sometimes visited her mother's house, attended church, shopped with her daughter, and went to medical appointments. (AR 25).

### 4. ALJ's Decision

The ALJ found that plaintiff's medically determinable mental impairments of panic disorder with agoraphobia and depression caused no more than mild limitation in any of the functional areas, and were, therefore, nonsevere. (AR 18-19). Specifically, the ALJ found that plaintiff had no limitation in understanding, remembering, or applying information; and no more than mild limitation in interacting with others; concentration, persistence or pace; and adapting or managing oneself. (AR 19). The ALJ gave the greatest weight to the opinion of the State Agency medical consultant, who concluded that plaintiff did not have a severe mental impairment. (AR 25).

### C. Analysis

The ALJ's determination that plaintiff's mental impairments are not severe is not supported by substantial evidence. In finding no more than mild limitation in interacting with others, the ALJ noted that although plaintiff prefers to stay home, "she sometimes visits her mother's house, attends church, shops with her daughter, and goes to medical appointments." (AR 19). In doing so, the ALJ failed to account for significant, probative evidence in the record that plaintiff does not go out by herself, some days she cannot go out at all due to anxiety, and going out generally induces panic attacks. (AR 261, 789-90, 808-09). In addition, in discounting MFT Russell's May 2015 opinion, the ALJ *incorrectly* noted that

MFT Russell had only been treating plaintiff for one month at the time of such opinion, and further noted the assertedly brief treating relationship in discounting both MFT Russell's May 2015 and December 2015 opinions.[6] (AR 25-26). The record reflects, however, that plaintiff had her initial assessment at CFC by MFT Russell and Dr. Nallamothu in April 2014 and had approximately ten appointments with Dr. Nallamothu before MFT Russell's May 2015 report. (AR 98, 333, 336-39). The ALJ's incomplete and incorrect characterization of the medical evidence calls into question the validity of both the ALJ's evaluation of the medical evidence and the ALJ's decision as a whole. See Regennitter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an "inaccurate characterization of the evidence" cannot support ALJ's decision); see also Reddick, 157 F.3d at 722-23 (error for ALJ to paraphrase medical evidence in manner that is "not entirely accurate regarding the content or tone of the record").

Regarding Dr. Purmandla's opinion, the ALJ's decision lacks sufficiently specific and legitimate reasons supported by substantial evidence for rejecting Dr. Purmandla's statement regarding moderate limitations in completing a workday or work week. According to the ALJ, the statement was "inconsistent with the rest of [Dr. Purmandla's] opinion and the opinions discussed [in the decision]." (AR 25). This can be a specific and legitimate reason supporting an ALJ's determination. See Houghton v. Commissioner of Social Security Administration, 493 Fed. Appx. 843, 845 (9th Cir. 2012) (holding that ALJ properly discounted medical opinions that were "internally inconsistent, unsupported by [the doctors'] own treatment records or clinical findings, [and] inconsistent with the record as a whole"). Here, however, this reason was not supported by substantial evidence. For example, Dr.

---

[6] Where a therapist works in conjunction with a medical physician, this may be considered an "acceptable medical source," while a therapist working on his/her own is not. Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1039 (9th Cir. 2003).

Purmandla noted plaintiff was unable to go places by herself and has no hobbies or pastimes. (AR 809). He observed her psychomotor activity to be shaking and nervous, her mood was described as anxious, and her concentration displayed deficits. (AR 809). He noted that plaintiff had been hospitalized six years prior at Riverside Mental Health due to anxiety and depression. (AR 808). He found that plaintiff had moderate difficulty maintaining composure and even temperament. (AR 810). These findings appear to support Dr. Purmandla's statement that plaintiff would have moderate limitations in completing a workday or work week, and the ALJ failed to specify how Dr. Purmandla's findings were inconsistent with his statement. Nor did the ALJ explain how the opinions of Dr. Nallamothu and MFT Russell, both indicating a near-inability to leave the house and a need for in-home care, were inconsistent with Dr. Purmandla's statement regarding moderate limitations. The ALJ selectively relied on Dr. Purmandla's GAF score indicating minimal symptoms, and treatment records showing intact memory, attention, judgment and insight at the expense of ignoring probative evidence of plaintiff's condition and near-inability to leave the house.[7] (AR 333-35, 789-93, 803-04, 816); see Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) (an ALJ may not properly reject a medical opinion based on a selective reliance of the relevant treatment evidence). The ALJ's consideration of the psychiatric evidence, including Dr. Purmandla's opinion, was insufficient for the reasons discussed above.

Finally, the Court cannot confidently conclude that the ALJ's error at step two and subsequent error in considering Dr. Purmandla's opinion were inconsequential to the ultimate nondisability determination, *i.e.*, harmless. For

---

[7]Defendant suggests there may be some other bases for crediting Dr. Williams' opinion over Dr. Purmandla's opinion. (Defendant's Motion at 8). Since the ALJ did not rely on these other bases in the decision, the Court may not affirm the ALJ's non-disability determination on the additional grounds defendant proffers. See Trevizo, 871 F.3d at 675 (citations omitted).

example, the vocational expert testified that there would be no jobs available if a hypothetical individual like plaintiff would miss work three times a month or more. (AR 67).

Accordingly, a remand is warranted so that the ALJ can reevaluate plaintiff's mental impairments and the medical opinion evidence.[8]

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is REVERSED and this matter is REMANDED for further administrative action consistent with this Opinion.[9]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 29, 2019

/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[8] The Court determines that a reversal and remand for immediate payment of benefits would not be appropriate.

[9] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted); Treichler, 775 F.3d at 1099 (noting such "ordinary remand rule" applies in Social Security cases) (citations omitted).